Our next case is ROHM Semiconductor v. MaxPower Semiconductor, 2021-1709. We're ready when you are, Mr. Frankel. Thank you, your honors. Good morning. May it please the court. The decision below should be vacated because incorporation of the California Code of Civil Procedure cannot be clear and unmistakable delegation of arbitrability disputes. Before you get to that point, can I ask you a little bit of background? It doesn't look like you ever moved to stay arbitration pending this appeal, did you? We did not and arbitration has commenced. It has commenced and so the arbitrator has been appointed, you've already started? An arbitrator has been appointed. Okay. Has the arbitrator reached the threshold question of arbitrability? The arbitrator has not. Okay. There are multiple disputes between the parties. This case, the case that's on appeal, was a request by ROHM Semiconductor USA for a declaration of non-infringement. There are also breach of contract disputes between the parties. It's not disputed that the breach of contract dispute is subject to arbitration and for that reason the arbitration is proceeding at least on the breach of contract. But the order of the district court to dismiss the case for declaratory judgment should be vacated because there was no delegation of the arbitrability dispute merely by incorporation of the California Code of Civil Procedure. You cite in your gray brief cases that you never cited below or never cited to us in your opening brief with respect to AAA arbitration but we're bound by what the Ninth Circuit has said with respect to these particular provisions, are we not? Well, of course it's the Supreme Court's first options case that ultimately controls. This is a Ninth Circuit case so Ninth Circuit law does apply. But the Ninth Circuit interpreted first options and said that in fact this is consistent with first options. Well, if your honor is referring to the Oracle case, it is distinguishable on a critical basis. So the cases that Max Power relies on involve incorporation of a single set of rules that provided that the arbitrator could decide arbitrability and did not also provide that courts could decide arbitrability. The California Code of Civil Procedure as this court found in the Qualcomm decision specifically permits courts to decide arbitrability disputes. But the problem is you're looking to provisions that don't relate to international disputes, right? The general provision, we're referring, there are at least 16 different sections within the California Code of Civil Procedure that relate to arbitration issues. And the parties did not specify in the agreement the Title 9.3 controls. But they don't have to because it is by definition an international dispute, is it not? Well, the declaratory judgment is a dispute between two domestic parties applying California law about U.S. patents. That's plainly a domestic dispute. The question is… It was Party Japan that was a party to this agreement. Is that right? Rome, Japan is a party to… To the agreement. Well, Max Power has taken the position that it was all of the Rome companies including Rome, USA. But there is a provision in the agreement that talks about all affiliates, right? Correct. I mean, I think trying to say that this is just a purely domestic dispute when the arbitration agreement actually encompasses all affiliates, I think that's like the weakest point of your argument. Well, the point is this. It's that it's not clear that it was intended to have the delegation. Title 9.3, which is the portion of the California Code that covers international arbitration, merely says that an arbitrator can decide arbitrability. The parties very easily in their contract could have said that they would arbitrate under Title 9.3. They actually could have said, even though this is an international agreement, we're going to arbitrate under the general provisions of California law. Well, but they didn't say that. That would be the exceptional. Well, the point is that they didn't say anything. Well, they said we're incorporating these rules, and once you get to the international rules, you have a different provision. So that's the very kind of daisy chain of inferences that the Supreme Court made clear cannot be clear in unmistakable delegation. I mean, what the Supreme Court made clear, and in the Ninth Circuit, no one else has ever disagreed with this, there has to be an actual meeting of the minds. The parties had to have sat down at the… Then if those arbitration rules contain a provision that says the arbitrator is going to handle the threshold question of arbitrability, then that's enough to say that that's a clear and unmistakable delegation to the arbitrator. That's basically Oracle America, right? Well, one critical distinction, and I think Oracle America is wrong inside, but a critical distinction, it's not necessary for your honors to agree with me on that point. A critical distinction… Well, we pretty much can't because we're bound by it, right? The controlling precedent is first options. The Ninth Circuit itself, subsequent to Oracle in the SEIU case, has recognized that some of its prior precedent has not given full credit to first options. And other circuit courts have criticized the Oracle decision. And in particular, in instances where there are multiple rules that could apply, they have said that that's not a clear and unmistakable delegation. But in those cases where there's any criticism, they are not sophisticated international parties, right? Well, I don't believe that that was the case in the Third Circuit's Chesapeake-Appalachia case, 809F3rd 746, which talked about the fact that there were a number of different AAA rules. And the logic of that case is you shouldn't have to go through the steps of first finding which rule applies, then looking at what it says about delegation. When you've gone that far, that's not clear and unmistakable delegation. Again, here… But again, those cases, I mean, putting aside whether you ever cited them in a timely manner, and some of the cases you're citing are non-PREC. But even putting all that aside, there's a big difference between whether someone would understand all the AAA rules when they're not a very sophisticated international party. I mean, there's a reason that there's an exception for international agreements, right? Well, the Chesapeake litigants were corporations, just like the corporations here. The fact that the party who signed the agreement is a foreign corporation, I don't think would make them – that should, if anything, suggest that they would be less familiar with the nuances here. But in Chesapeake, let me just quote you what the Third Circuit held. It said, virtually every circuit trip to consider the issue has determined the incorporation of the AAA arbitration rules constitutes clear and unmistakable evidence that the parties agreed to arbitrability. But it then found an exception for certain kinds of class actions. So it doesn't really support you. This isn't a class action. Well, it's not the fact that it's a class action. It's that there has been – to use the Third Circuit's language that is on point here, it requires a daisy chain of inferences. Again, to go back to the basic principles – But its primary holding isn't directly against the point that you're arguing. The primary holding is that it shouldn't be inferred from multiple steps that the parties agreed to delegate arbitrability. And that's what is required here. If the – again, to say that the district court got it right on the de novo review, your honors would find that the two parties negotiated and decided it was their intention. They had a real meeting of the minds, not a constructive meeting of the minds. They had in fact reached agreement on this issue. They decided we understand that the default is that the court should decide this. It doesn't – the courts are the gatekeepers because if you ask arbitrators if a dispute is subject to arbitration, they're probably going to say yes. The presumption is flipped here by the Supreme Court. There has to be clear and unmistakable evidence, which I think of as a patent litigator. It's like clear and convincing evidence. And that can't be the case here. If the parties wanted to reach that decision, they would have said that. They could have very easily – that's what typically a well-drafted arbitration provision would say. But again, every circuit to have considered the issue says when you incorporate rules that say that, you have therefore said it. The decisions that have come to that point have all been based on selection of a single rule. Can we move on? Let's just assume the court is going to accept that the wealth of case law out there tells us that the incorporation of any arbitration rules constitutes a clear and unmistakable delegation to the arbitrator if those rules actually say that the arbitrator decides the threshold question. So really, can we go to the next question, which is whether these particular arbitration rules in fact do that in the context of an international dispute? Let's just go there. Right. Understood, Your Honor. That is the primary argument that we're making. May rule. I'm sorry. Yes. The provision says may rule and that's not good enough in your view. Well, right. What I meant by the primary argument that we're making is that the California Code of Civil Procedure has multiple sections. And the fact that the international section says that an arbitrator may rule does not preclude the courts from also deciding. Again, I'll refer, Your Honors, to its own Qualcomm decision, which notes that under California law, the rule, unless the parties specifically agree otherwise, is that the court should decide. That decision is dated 2006. That's one year before the parties entered into this agreement. Oracle came in 2013. That's five years after the parties entered into the agreement. So if we're going to assume, and I respectfully submit that this is a fiction. It's a legal fiction to assume that the parties were aware of all these nuances when they entered into the agreement. But if they had hired an international arbitration expert who was up on the most current case law and she said, yeah, the federal circuit just issued a decision a couple months ago and said, if you select California law, you're saying that the courts will decide. Not an arbitrator. That would be the most recent authority available to them. Counsel, you wanted to save four minutes for rebuttal, which means you're into your rebuttal time. We're having trouble with the lights here. But you're down about three and a half minutes. You want to continue or save your time? I'll save my time unless there's a question I can answer for any of your honors. OK. We will hear from Mr. Cook. Oh, I see. Sorry, I don't have your name. Sorry to disappoint you, Your Honor. I'm not disappointed. I'm happy to have any good arguments. We will inform you of your arguments. Nancy Tompkins for Max Power. Good morning. Good morning, Ms. Tompkins. I'd first like to say that my friend just said the primary argument they're making is that the Code of Civil Procedure has multiple rules. And I need to point out to the court that this is an argument that the district court never heard before. I heard you make reference, Judge Lurie, to judges are not pigs searching for truffles in Greece. And this is an argument that Judge Chabria could not have even found had he been rooting among the arguments that were offered. What Rome argued below was not that Oracle was decided in error. What Rome argued below was that Oracle was inapposite because the United Nations rule discussed in Oracle is unlike the Code of Civil Procedure rule that's incorporated into this contract. And Judge Chabria invited counsel at that argument on February 4th to explain the difference between those two rules. And counsel did not offer any difference. The only point I'm making is that Judge Chabria, based on the rule, the Supreme Court said it in a slightly less succinct way, the argument you make about judges not being pigs rooting for truffles, in a recent case called United States against Sineg Smith, which is 140 S Court 1575, a 2020 case, that judges are just charged with adjudicating the arguments that the parties frame for them. And so the arguments that we've just heard were never framed for the district court. My point is simply that the district court committed no error in this case based on the arguments presented to him. In that case, Rome conceded that the United Nations rule, the Ninth Circuit discussed in Oracle, actually delegated arbitrability to the arbitrator. Rome has made that same concession in its opening brief in this case. So that's just a primary point I want to make. Going on to the question- So meaning his contention today that it was wrongly decided. It's not supported by anything that was argued before. That's correct. The other point I would make about that is that I think that Rome has consistently misread Judge Chabria's statement that he made at the oral argument on February 4th. He said, I think one could say that clear and unmistakable is no longer clear and unmistakable after Oracle. And Rome has consistently repeated that quote, but that's not the full quote. Judge Chabria says, I think one could say that clear and unmistakable is no longer clear and unmistakable after Oracle and all of the other cases that said that you delegate that to the arbitrator with language like that. So it's actually every circuit that has ever looked at this issue has concluded that in the ordinary case that AAA rules constitute a clear and unmistakable delegation. This is simply the direction the law has taken. No, he said the same thing at Qualcomm, right? Yes, the Ninth Circuit did. And Qualcomm in the Ninth Circuit is the one case, or excuse me, you said the same thing in Qualcomm. Thank you. Yes. The Ninth Circuit in Oracle is the one court handily that actually shut the door on this concern about may and shall, this permissive language. Because in that court, in Oracle, the Ninth Circuit was reversing the district court on that very ground. The district court in Oracle had said, well, looking at this United Nations rule, the language is permissive. It confers authority, but it's a permissive grant. It doesn't say shall. It says may. And the Ninth Circuit just closed the door on that. But the language is different from the relevant 1291 provision here. I mean, judges, courts, we're all very disciplined to have a knee-jerk reaction whenever we see the word shall in a statute or a contract or something like that versus when we see the word may. And those two verbs have very different understandings under the law. But the United Nations rule and the AAA rule doesn't say shall. It says shall have the power to, which is just a conferral of authority. And you can understand why, well, the reason why it wouldn't say shall is because, as we argue in our brief, you don't want to open an arbitrator to reversal for simply failing to address his own jurisdiction at the initiation of the case. In some cases, the parties don't dispute arbitrability. I guess I'm just wondering why isn't the right understanding of shall have the power to, it means transfer of power to a particular authority, whereas may just simply opens the door to allow someone to decide an issue but doesn't necessarily assign and transfer the power in the same way as shall have the power to. I, like Judge Tabria, I don't, respectfully, I don't see the distinction between shall, you may, and you shall have the power to do something. I see them both as a conferral of authority. But if you think of the reason why. I don't know how to write that shoulder shrug into an opinion. Sorry, sorry. Shall, you may. Well, I'll go on to say, if you think about what about the chaos that can ensue when there is in fact concurrent jurisdiction among between courts and arbitrators to decide that threshold question of arbitrability. Consider two scenarios. One, a scenario where a party goes to each. The arbitrator says, well, only the court has jurisdiction over this. And the court says, only the arbitrator has jurisdiction over this. Where do you take your dispute? And then consider another scenario, much like our scenario here. Well, except much like a scenario where the court said, I have, the court says, I have jurisdiction. And the arbitrator says, I have jurisdiction. And everybody you take it to says, we have jurisdiction, too. And that kind of thing defeats, leads to the subversion of every principle that the Federal Arbitration Act and 90 years of case law is trying to advance. We have an arbitration clause in this contract. And if you look at our statement of related cases, you see that there's a dispute. There are nine disputes all around the globe. Two more have been filed since we wrote that statement of related cases. We're in the PTA. We're in the district court. We're in the superior court. We're in Korea. We're in Taiwan. And we're in China. And we have as broad an arbitration clause as any California case has ever seen. So that's the problem if may is interpreted as something, as some permissive thing. Is there something we should take away from the fact that 1281, which isn't for international disputes, has a provision that's really devoted to the court handling an issue like this? Whereas, distinctively, 1297 for international disputes is really contemplating and calling out the arbitral tribunal itself. And so maybe there's some kind of comparison there that we should understand that one is really devoted to one thing and the other is not. You're correct about that, Your Honor. And it's actually the incorporation of the Code of Civil Procedure into this dispute does not introduce any ambiguity at all. It's crystal clear, actually. It's a statute. It's meant to be very clear. I'm sure you've come across ambiguous statutes, but this isn't one of them. What you do and the flavor of your dispute, you don't look to the parties. Are they both California cases? You look at 1297.13, and it says if your agreement has any of these many attributes, has any one of them, it is an international agreement, an international commercial agreement. And then you follow these rules. And in this case, not only do you follow these rules, but these other rules, including 1281.2, are superseded. So in the Code of Civil Procedure, there's no case in which these two possibilities are operating alongside each other. If you have an international dispute, 1281.2 is superseded, and you're going along under 1297. And this contract, Rome has never disputed, has not just one but three of the attributes that make this an international commercial contract. And so it's crystal clear. It's clear as a bell that we proceed under 1297. And incidentally, it's typical in international commercial agreements that the arbitrator, that arbitrability is delegated to the arbitrator because foreign companies don't want to submit to our courts for any reason. No offense, Your Honors. They want a neutral party to decide both arbitrability and the underlying merits of the dispute. And I've cited a few things in the red brief, extra authorities, a law review article, and a treatise. But this competence-competence doctrine is the norm in international commercial arbitration. Do you agree with my reading of Chesapeake Appalachia, or do you think that the Third Circuit has really raised severe questions about Oracle? I agree with your reading, Your Honor. And I will also say that there are certainly, Rome has certainly found several Third Circuit cases that have some very unusual facts. And those cases, you know, have gotten down into the weeds and where you're talking about unconscionability and invalidity and does the contract exist at all. That's in the field intelligence case. But if you really want to know what the Third Circuit thinks about all this, I commend you to an unpublished case called Richardson v. Coverall, North America, that was decided April 28, 2020. That was a case where there was an unsophisticated party who was trying to, he was a franchisee for a janitorial service. And the court held in an unpublished decision that it had no trouble concluding that this unsophisticated party was bound to arbitrate arbitrability because of the incorporation of AAA rules. And the Third Circuit said in that case, we can't imagine a more clear and unmistakable delegation of authority to the arbitrator to decide arbitrability than this incorporation of AAA rules. And the Supreme Court denied cert on that case in March 2021. So certainly there are some fringe cases, many of them arising in the Third Circuit, where it is much more ambiguous what the parties intended or whether that arbitrability should apply to the particular, you know, facts of that case. But in the normal case, and I submit this is the normal case, the Third Circuit has, you know, sort of accepted this without blinking and without publishing, in fact. Well, let me see if there's anything else I should say. I have nothing further, Your Honor. Thank you, Ms. Tompkins. I want to make clear that we judges get a list of attorneys. And generally, if it's to be changed, it's changed when attorneys check in at the clerk's office. So why you were not listed, I don't know. I was only joking, Your Honor. Thank you for your argument. Thank you very much. Mr. Franklin has a little rebuttal time. Thank you, Your Honors. It's clear here that the parties did not select the California Code of Civil Procedure as a shorthand for agreeing to delegate arbitrability. And that's what Your Honors would need to find on de novo review. They came to a meeting of the mind. They decided they wanted to deviate from the standard rule and they wanted to give that responsibility to an arbitrator. But they were so confident about that that they just said California Code of Civil Procedure. They didn't add that extra sentence, which is very common in arbitration provisions. And even more so, they were confident that whoever adjudicated this dispute would conclude that only the international rules apply. Your friend on the other side argued, and looking at the record below, I think that she is right, that you never argued this wasn't an international dispute or that the international rules didn't control. I have to respectfully disagree with my friend that I would direct the court to Appendix 887, where we made the argument to Judge Chabria that a critical distinction between the incorporation of the California rules is that the California rules have multiple exceptions. And the other rules that are typically the case in Oracle and other cases do not. And we absolutely briefed below as well the issue that this was a domestic dispute and therefore it was not clear which set of rules applied. We've talked a lot about the Chesapeake case. I would refer the court to page 753 to 754. That's where the Third Circuit notes that the burden of overcoming the presumption is onerous as it requires expressed contractual language unambiguously delegating the question of arbitrability to the arbitrator. And then it goes on to say in that case there were several different AAA rules that could apply. And the fact that it was ambiguous which rule might apply meant that the incorporation of AAA rules generally was not clear and unmistakable delegation. Here we have the same situation. It was argued below that the California Code of Civil Procedure has different rules. They didn't specify the international rules. If that was really a shorthand for their agreement, they could have just said, we're going to do this under Title IX.3 instead of other titles. Judge Chen, to your point, may is permissive. It's not exclusive. And under California law, the court has jurisdiction to decide arbitrability disputes. The international section does not vest exclusive jurisdiction with an arbitrator. And if the parties really decided that they wanted that to be the case, they should have said it in the agreement. And they did not. So we would respectfully submit that there has not been a true, there's not clear and unmistakable evidence of the parties reaching a meeting of the mind on this issue. Counsel said that you could, that this would invite chaos. But the way to avoid chaos is if you reach an agreement to delegate arbitrability, to expressly state it in the agreement. That's what parties should do, and that's what they typically do when they want a specific set of rules to apply and they want a specific person to make that decision. Are there any final questions I can address? Thank you. It's a real pleasure to be back here in person. Thank you to both counsel. The case is submitted. All rise. Your report is adjourned until tomorrow morning at 8 o'clock a.m.